Emet DANGERFIELD, Appellant,

v.

CITY OF KANSAS CITY, Missouri, Respondent.

No. WD 61294.

Missouri Court of Appeals, Western District.

June 30, 2003.

---

Douglas A. Patterson, Kansas City, MO, for Appellant.

Daniel G. Jackson, III, Charlotte Ferns, Co–Counsel, Kansas City, MO, for Respondent.

Before HOWARD, P.J., LOWENSTEIN and HARDWICK, JJ.

HAROLD L. LOWENSTEIN, Judge.

Emet Dangerfield appeals the granting of City of Kansas City's second motion for new trial. Six months earlier, Dangerfield had obtained a verdict, for the wrongful death of his daughter, against the respondent, City of Kansas City, based upon a dangerous condition of city property. Dangerfield contends that when it purported to grant the City's second motion, the trial court did not have jurisdiction.

## Factual and Procedural History

On July 12, 1999, Emet Dangerfield's ten-year-old daughter was struck and killed by a motorist whose view, Dangerfield averred in this wrongful death suit brought pursuant to section 537.080, RSMo. (1994), against the City of Kansas City ("City"), was obstructed by the extremely long grass and weeds on its property. Appellant's daughter was riding her bicycle at the intersection of 45th and Bales in Kansas City. There were no signals or stop signs at the intersection. On August 8, 2001, the jury returned a verdict in favor of Dangerfield, assessing damages at $843,333.33. The jury attributed thirty-two percent fault to the City and sixty-eight percent fault to Dangerfield's daughter. Fourteen days after the verdict, on August 22nd, the trial court entered judgment in favor of Emet Dangerfield in the sum of $269,866.67.

Nearly one month later, on September 20th, the City filed a "motion to amend judgment to conform with the limits of § 537.610(2), RSMo 1994." Section 537.610.2 limits the liability of the public entities for damages in tort actions.[1] The next day, September 21st, the City moved for a judgment notwithstanding the verdict (J.N.O.V.) and, alternatively, for a new trial. One of the twelve grounds for a new trial was that a juror had visited the scene of the incident during an overnight recess and later told the other jury members that a stop sign had been placed at the intersection after the accident. A juror affidavit was submitted in support of this allegation.

On November 29th, the trial court, in a ruling captioned an "order," denied the City's motion for J.N.O.V. or in the alternative, for a new trial, but granted the motion to cap damages at $100,000—without elaborating the basis for its decision. After a call to the division clerk or to the judge—the parties disagree as to which happened and the record is silent—the trial court, on December 10th, issued another ruling, identical to the November 29th "Order," except that it was now designated a "Judgment."

---

1. Section 537.610(2), RSMo. (1994), which is applicable to this suit, reads:

   The liability of the state and its public entities on claims within the scope of sections 537.600 to 537.650, shall not exceed one million dollars for all claims arising out of a single accident or occurrence and shall not exceed one-hundred thousand dollars for any one person in a single accident or occurrence, except for those claims governed by the provisions of the Missouri workers' compensation law, chapter 287, RSMo.

On December 20th, the City re-filed a *verbatim* copy of its earlier motion for new trial, including the suggestions (with the minor exception of one additional ground). Later that day, the City filed a notice of appeal with the trial court. On February 21, 2002, the trial court, now finding that there had been jury misconduct, granted the City's second motion for a new trial. On April 17, 2002, this court granted the City's motion to voluntarily dismiss its appeal. *See* Rule 84.09. Dangerfield appeals the trial court's decision to grant a new trial. *See* § 512.020, RSMo. (2000). A timeline of relevant events appears within the analysis.

## Analysis

■ On appeal, Dangerfield challenges the trial court's jurisdiction to grant the City's second motion for new trial. *See* § 512.020, RSMo. (2000). The existence of jurisdiction is a question of law that this court reviews *de novo*. *State v. Ferrier*, 86 S.W.3d 125, 127 (Mo.App.2002). This court must construe these rules so as "to secure the just, speedy and inexpensive determination of every action." Rule 41.03. Dangerfield argues that the August 22nd judgment became final on November 29th, the date the trial court ruled on all post-trial motions. On that date, he claims, the trial court lost jurisdiction to grant any future motions by the City. Thus, he claims that the order granting the new trial should be set aside and the August 22nd judgment reinstated. This case does not involve an appeal from the trial court's capping the judgment to comply with Section 537.610, RSMo. (1994). Thus, this court assumes that Dangerfield does not contest reinstating the $100,000 judgment if the order for a new trial is ruled a nullity.

In this case, there are various motions that were filed and rules that apply to effect the finality of the judgment. In order to determine when the judgment was final and the trial court lost jurisdiction, it is important to consider what occurred in this case, the time frame in which it occurred, and the rules associated with finality of a judgment. Five rules that are applicable in this case are Rules 74.01, 74.06, 75.01, 81.05 and 78.07. The difficulty in applying these various rules is that they often apply at a distinct point in the process and their interplay is somewhat unexplained by the rules.

Generally, under Rule 75.01, a trial court retains jurisdiction for thirty days, during which it may vacate, reopen, correct, amend, or modify its judgment. *See also In re Marriage of Jeffrey*, 53 S.W.3d 173, 175 (Mo.App.2001). The court's jurisdiction may be extended, however, under Rule 81.05. This rule provides that the judgment becomes final at the expiration of thirty days, unless an authorized after-trial motion is filed which serves to extend the jurisdiction up to ninety days or on the date the trial court rules on the last motion. Third, Rule 78.07(c) provides that the trial court may amend a judgment pursuant to Rule 75.01 or upon motion by the party. Unless otherwise specified, this amended judgment becomes a new judgment. In addition to these three rules, for a judgment to be final under Rule 74.01, there must be a ruling that is denominated "judgment" or "decree." *City of St. Louis v. Hughes*, 950 S.W.2d 850, 853 (Mo. banc 1997).

### Timeline of Events

1. August 8, 2001—Jury returns verdict, assessing damages at $843,333.33 and fault apportioned at 32% to the City and 68% to Dangerfield's daughter.

2. August 22, 2001—Trial court enters judgment in accordance with the

jury verdict for $269,866.67 (under Rule 75.01, the trial court retains jurisdiction for 30 days).

3. September 20, 2001—City files "Motion to Amend Judgment to Conform with the Limits of § 537.610(2)" filed (if authorized after-trial motion under Rule 81.05, extends jurisdiction of the court up to 90 days). Dangerfield does not contest this motion.

4. September 21, 2001—City files Motion for JNOV or New Trial (authorized after-trial motion, extends jurisdiction of the court up to 90 days).

5. November 29, 2001—Trial court issues "Order" granting "motion to amend" and denying motion for new trial (Judgment final under Rule 81.05 or, as City alleges, did not comply with Rule 74.01(a)).

6. December 10, 2001—Trial court issues ruling identical to November 29th Order but designated "Judgment" (nullity because court lost jurisdiction or as City alleges a judgment effectively amending August 22 judgment, thus a "new" judgment that extends jurisdiction of the court for 30 days).

7. December 20, 2001—City files in almost the same language as the September 21st motion a second motion for JNOV or New Trial (as City alleges, extends jurisdiction up to 90 days).

8. December 20, 2001—City files Notice of Appeal.

9. February 21, 2002—Trial court grants second motion for new trial.

10. April 17, 2002—This court granted City's motion to dismiss its appeal.

## A. When Did the Judgment Become Final?

Whether the trial court had jurisdiction to grant the City's second motion for new trial depends on when the August 22nd judgment became final under Rule 81.05. Once a judgment becomes final under Rule 81.05, the trial court loses jurisdiction to entertain any further motions, unless another Rule provides otherwise. *In re Marriage of Jeffrey*, 53 S.W.3d at 175. Under Rule 81.05(a)(2), "[i]f a party timely files an authorized after-trial motion, the judgment becomes final at the earlier of the following:"

(A) Ninety days from the date the last timely motion was filed, on which date all motions not ruled shall be deemed overruled; or

(B) If all motions have been ruled, then the date of ruling of the last motion to be ruled or thirty days after entry of judgment, whichever is later.

Were the City's first motion for new trial and motion to reduce the damages in the August 22nd judgment authorized post-trial motions? The Supreme Court has recognized six post-trial motions expressly authorized by the rules:

(1) "a motion to dismiss without prejudice after the introduction of evidence is commenced under Rule 67.01;

(2) "a motion for directed verdict under Rule 72.01(a);

(3) "a motion for judgment notwithstanding the verdict under Rule 72.01(b);

(4) "a motion to amend the judgment [under then-] Rule 73.01(a)(3)," now Rule 78.04; (5) "a motion for relief from judgment or order under Rule 74.06(a) and (b), but see, Rule 74.06(c);" and

(6) "a motion for a new trial under [then-] Rule 78," now Rule 78.04.

*Am. Family Mut. Ins. Co. v. Hart,* 41 S.W.3d 504, 511–12 (Mo.App.2000) (quoting *Taylor v. United Parcel Serv., Inc.,* 854 S.W.2d 390, 392 n. 1 (Mo. banc 1993)). Thus, the City's September 21st motion for new trial was a valid post-trial motion. This court will assume, merely for the sake of argument and solely for purposes of Rule 81.05, that the City's September 29th motion to reduce damages to $100,000 was also authorized. (More on this later.)

Ninety days after the City's last timely motion (the September 21st motion for new trial) was December 21st. Both of the City's post-trial motions were decided on November 29th. November 29th comes before December 21st, so November 29th is the date the August 22nd judgment became final under Rule 81.05.

## B. Did the Trial Court's November 29th Order Create a New, Amended Judgment under Rule 78.07(c)?

■ The City argues that the November 29th order created an amended or modified judgment by changing the amount of damages in the August 22nd judgment. If it did, then, the City claims, it could make another post-trial motion under Rule 81.05 because an amended judgment is a new judgment for all purposes, as provided in Rule 78.07(c). As a new judgment, the November 29th ruling thus allowed the City to file a second motion for new trial. If the November 29th order did create an amended judgment, the City is correct; however, the November 29th order did not create an amended judgment, so the City's argument fails.

The general rule for amending judgments is that a "trial court may amend or modify any judgment in accordance with Rule 75.01 or upon motion by any party. Unless an amended judgment shall otherwise specify, an amended judgment shall

be deemed a new judgment for all purposes." Rule 78.07(c). There are many reasons why the November 29th order did not create an amended judgment. The first is that the City did not indicate that it was seeking to amend the August 22nd judgment under Rule 78.07(c). Failure to specifically rely on Rule 78.07(c) in seeking to amend a judgment is sufficient to deny a party the benefits of Rule 78.07(c). *Hart,* 41 S.W.3d at 512 (holding the same about former Rule 73.01(a)(5), the precursor of Rule 78.07); *State, Dep't. of Labor & Indus. Relations v. Ron Woods Mech., Inc.,* 926 S.W.2d 537, 540 (Mo.App.1996). Hence, the City does not get the benefit of filing a second motion for new trial.

A second problem with the City's position is that the operation of the November 29th order reducing the damages in the August 22nd judgment to conform with Section 537.610(2), RSMo. (1994), is that it was tantamount to the granting of a motion to remit the judgment to a liquidated sum, which does not create an amended judgment. *Steuernagel v. St. Louis Pub. Serv. Co.,* 361 Mo. 1066, 238 S.W.2d 426, 429 (banc 1951); *Jenkins v. Roberts,* 420 S.W.2d 24, 26 (Mo.App.1967) (citing and quoting *Steuernagel* ). *See also Cotter v. Miller,* 54 S.W.3d 691, 694–95 (Mo.App. 2001). Both operate after a verdict is reached. *Cf. Richardson v. State Highway & Transp. Comm'n,* 863 S.W.2d 876, 880 (Mo. banc 1993) & § 537.068, RSMo. (1994). Both reduce damages. *Cf.* §§ 537.068 & 537.610, RSMo. (1994). Both are imposed because the damages exceed what the law allows. Functionally, there is no distinction between a verdict that exceeds what the evidence as a matter of law allows and what the law as codified in statute allows. In fact, the Eastern District has described a trial court's action in capping damages to accord with the limits of Section 537.610.1, as the remitting of a

damage award. *McGuckin v. City of St. Louis,* 910 S.W.2d 842, 844, 844 n. 1 (Mo. App.1995). "[T]he entry after *remittitur* [i.e., the actual remitting of the judgment] is a correction of the judgment originally entered and not actually a new judgment. The appealable judgment is the original judgment (as corrected of course) but still the appeal is from the original judgment, that is[,] from what remains of it." *Steuernagel,* 238 S.W.2d at 429. The imposition of the cap established by Section 537.610 did not create an amended judgment. *Cf. Hart,* 41 S.W.3d at 512 ("In requesting an award of prejudgment interest, however, Appellants are not seeking to amend the September 27th judgments.").

A third reason the November 29th order could not have been a judgment is that the November 29th order was not designated a "judgment." Rule 74.01 ("A judgment is rendered when entered. A judgment is entered when a writing signed by the judge and *denominated 'judgment' or 'decree' is filed.*") (emphasis added); *Koppenaal v. Dir. of Revenue,* 987 S.W.2d 446, 451 (Mo.App.1999).

Treating the August 22nd judgment *cum* November 29th order as a new, amended judgment would risk creating a policy nightmare. A party could, as the City has done, move to amend the judgment to comply with, say, a statutory cap and then file a motion for a new trial. If the court denied the latter and granted the former in an (aptly denominated) order, the party could then move for the order to be re-branded a "judgment." Then the party could, as the City has done here, make the identical motion for new trial. Alternatively, if the trial court had initially denied the party's post-trial motions in a so-denominated "judgment," the party could turn around and file the exact same motion for new trial, though it would be rather futile to do so (unless one were interested in delaying execution of the judgment or one discovered more evidence to substantiate the motion for new trial). After denying the motion, the process could be repeated *ad infinitum.*

■■■ This may seem to create a quandary for the City. If the November 29th order reducing the August 22nd judgment to $100,000 was not a new, amended judgment, then does the August 22nd judgment—in particular, the uncapped damages—stand, forcing the City to appeal from a judgment it thought it had amended? There is no Catch–22. The November 29th order changes the August 22nd judgment to comply with the statutory cap. The City could have sustained an appeal from the as-modified judgment of August 22nd. *City of St. Louis v. Hughes* requires that a trial court's final ruling be denominated a "judgment" for there to be an appealable judgment. 950 S.W.2d 850, 853 (Mo. banc 1997). An appealable judgment must also dispose of all the issues and parties in the case, leaving nothing for further resolution. *Id.* at 852. Both requirements were met. The November 29th order referred to the original judgment. It did not change the liability determination, did not add parties, did not do anything except change the amount of damages awarded to comply with the statutory cap, which was pleaded by the City. It is as if the court crossed out the original damage amount and merely re-issued the original judgment or stapled the November 29th order to the August 22nd judgment. (This is analogous to appeals from orders modifying alimony or child support. Section 452.110, RSMo. (2001), provides that "there may be a review of any order or judgment *touching* the alimony and maintenance of the spouse, and the care, custody and maintenance of the children, or any of them, *as in other cases*" (emphasis added). The statute anticipates that

the court may modify by order. The statute does not exempt appeals of alimony and child-support modifications from *Hughes'* strictures, but rather provides that "there may be a review ... as in other cases." This court has often reviewed trial court *orders* modifying child support awards where the remainder of the original decree was intact. *See, e.g., Potter v. Potter,* 90 S.W.3d 517, 519 (Mo. App.2002).) In fact, the City did appeal, though later voluntarily dismissing its appeal, in all likelihood because the trial court's granting of a new trial vacated the August 22nd judgment, thus depriving the City of standing to appeal, since it was no longer aggrieved. (Of course, as held *infra,* the trial court did not have the power to grant the City a new trial; the original judgment had not been validly vacated, so the City had standing to maintain its appeal.)

## C. Did Rule 74.06 Authorize the Trial Court to Grant the City's Second Motion for New Trial?

Assume, for the sake of argument, that the trial court and the City intended the November 29th order (capping the damages) to be an amended judgment and that it could have been a judgment. Yet the trial court, through inadvertence, failed to designate it as such. Couldn't the court have *sua sponte* entered a *nunc pro tunc* order to re-denominate the order a "judgment"? If it could, then the December 10th so-called judgment was a valid *nunc pro tunc,* giving the trial court jurisdiction to entertain the City's December 20th motion for a new trial, because, according to this theory, a order *nunc pro tunc* is itself a judgment.

■■■ While a trial court may *sua sponte* correct a clerical mistake in a judgment (as the City has implied in its brief), there are, nevertheless, at least three ma-jor problems with this argument. First, the December 10th ruling was not intended to be a new judgment; it was a ruling on a post-trial motion regarding a judgment still in force. Second, "[i]t is improper to use a *nunc pro tunc* order to correct judicial inadvertence, omission, oversight or error, or to show what the court might or should have done as distinguished from what it actually did, or to conform to what the court intended to do but did not do." *Keck v. Keck,* 996 S.W.2d 652, 654 (Mo. App.1999). The City is arguing that the court erroneously called its judgment an order and that it should be allowed to correct that mistake. The trial court "meant to correct judicial inadvertence in failing to denominate the original order a 'judgment,' and to show what the court intended to do." *Baker v. Baker,* 90 S.W.3d 488, 490 (Mo.App.2002). But "[n]unc pro tunc cannot be used to create a judgment." *Id.*

■■■ The City's argument also proves too much. Merely calling an order a "judgment" does not make it one. While designating a trial court decision a "judgment" is essential under *City of St. Louis v. Hughes,* 950 S.W.2d 850, 853 (Mo. banc 1997), for there to be a final judgment for purposes of appeal, this does not mean that merely calling a decision a "judgment" makes it one. *Cf. In re J.W.P.,* 986 S.W.2d 198, 199 (Mo.App.1999). When a trial court decides a dispute between parties and there is nothing further to decide, but mistakenly denominates its decision an "order," merely changing the denomination to "judgment" does not mint a new judgment, but rather fulfills *Hughes'* bright-line finality requirement. The City has not cited any authority and this Court cannot find any basis for the contrary conclusion.

Rule 74.06(b) is arguably the most apt rule in this case, but the City never in-

voked it, either in this court or in the trial court. Rule 74.06(b) provides that:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is irregular; (4) the judgment is void; or (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment remain in force.

Had the rule been invoked, and the new judgment been entered under 74.06(b)'s auspices, section one is inapposite because the grant of a new trial had already been denied; the City's first motion for new trial posited the identical jury misconduct as in its second motion for new trial. There was thus no "mistake, inadvertence, surprise, or excusable neglect." Because the fraud or misconduct in section two must be that of an adverse party (not a jury member), it is not applicable, either. Granting a motion for new trial does not make the judgment regular—it vacates it. So section three does not apply. The City never argued that the final judgment was void because of alleged jury misconduct, rather that the jury misconduct caused the verdict to be unsupported by substantial evidence. And section 5 is not applicable, for, applying *ejusdem generis*, it is clear that the equities referred to in that section deals with the cases where post-judgment actions make it unfair to allow the final judgment to stand. Any jury misconduct occurred during trial, and the City already raised the issue with the trial court in its first motion for new trial.

## D.  Rule 75.01

If the trial court's re-denomination of the November 29th order had been entered pursuant to Rule 75.01, thus creating an amended judgment, then the City's second motion for new trial would have been timely brought under Rule 81.05. However, Rule 75.01 does not help the City. Under Rule 75.01, a trial court retains control over its judgment for thirty days after entered, and may, "after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify" its judgment within that time. Here, thirty days after entry of the original judgment, which occurred on August 22nd, was September 21st. That was when the City filed its first motion for new trial and after that filed its motion to amend the judgment. Thus, even if the first motion for new trial was interlocutory, the trial court lost its power under Rule 75.01 to amend or modify the judgment the very day after the City moved to amend and before the trial granted the motion to reduce the judgment to the statutory cap. Even if the December 10th re-designation of the November 29th order was done within the thirty day window created by Rule 75.01—it wasn't—the Rule requires the court to give the parties "an opportunity to be heard." This was not done: the trial court's December 10th ruling followed an *ex parte* communication (whether to the judge or to the clerk is immaterial). And, the November 29th order was not a final judgment. *See supra.*

As noted before, Rule 41.03 compels this court to construe the rules so as to insure a "just, speedy[,] and inexpensive determination of every action." The analysis above comports with Rule 41.03. There is no injustice in denying the City the opportunity to file two motions for new trial, in light of the fact that no rule (directly) gives a party the right to make two mo-

tions for new trial, *Am. Family Mut. Ins. Co. v. Lasker,* 12 S.W.3d at 717, and in light of the fact that the second motion was a *verbatim* version of the first (as was, essentially, the second set of suggestions). If anything, allowing the City to file two identical motions for new trial merely because of a formalist exercise (namely, re-branding an "order" a "judgment") would create a grave injustice to appellant Dangerfield. Efficiency, moreover, militates against allowing a party to take a second bite at the apple. While collateral estoppel was not raised by Dangerfield, *see Walker v. Walker,* 954 S.W.2d 425, 427 (Mo.App.1997) ("[A] party cannot file a motion to modify, asserting the same basis for modification in each motion, and ignore the doctrines of res judicata and collateral estoppel in the process."), this court finds that its interpretation and application of the rules of civil procedure upholds one of the doctrine's goals, the preclusion of endless re-litigation of matters already decided.

**E.  Did the Pendency of the City's Previous Appeal Preclude the Trial Court from Granting the City's Second Motion for New Trial?**

Apart from the inapplicability of Rules 75.01, 74.06, and 78.07(c), there is a second reason why the trial court lacked jurisdiction to grant the City's second motion for new trial (one not raised by either party). Once the City filed a notice of appeal on December 20, 2001 (hours after it filed a motion for new trial), the trial court lost jurisdiction to grant the City's motion. "Although [a trial court] does not lose its jurisdiction over records or of the authority to exercise ministerial or execute functions [*sic*] prior to the filing of the transcript on appeal, the filing of the notice of appeal suspends any further exercise of the [trial court's] judicial function." *State ex rel. GTE North, Inc. v. Mo. Pub. Serv. Comm'n,* 835 S.W.2d 356, 364 (Mo. App.1992). Whether to vacate a judgment and grant a motion for new trial is a discretionary, not ministerial, decision. *Travis v. Stone,* 66 S.W.3d 1, 3 (Mo. banc 2002). The City's first appeal was not dismissed until around two months after the trial court had already purported to grant the City's motion for new trial. Accordingly, though dismissal of the appeal re-vested jurisdiction in the trial court, *Kuta v. Collier,* 637 S.W.2d 734, 737 (Mo. App.1982), the court's grant of a new trial was ineffective because the grant was premature.

In sum, the trial court did not have jurisdiction to grant the City's second motion for new trial for two reasons: (1) the pendency of its appeal stripped the trial court of jurisdiction to entertain the City's motion, and (2) the November 29th order did not create an amended judgment conferring on the trial court the power to grant the City's second motion for new trial. The judgment of the trial court granting the City a new trial is reversed, and the cause is remanded for reinstatement of the judgment for $100,000 in favor of the appellant Dangerfield.

All concur.