SD INVESTMENTS, INC., Respondent,

v.

MICHAEL–PAUL, L.L.C., Appellant.

No. WD 63228.

Missouri Court of Appeals,
Western District.

March 22, 2005.

William M. Quitmeier, Kansas City, Mo, for appellant.

Patrick J. Doran, Kansas City, Mo, for respondent.

Before ROBERT G. ULRICH, Presiding Judge, JAMES M. SMART, JR., Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

On February 19, 1999, SD Investments, Inc. entered into a lease agreement with Michael–Paul, L.L.C. to rent a piece of commercial property located at 101 Southwest Boulevard in Kansas City, Missouri. The lease agreement contained a purchase option providing that, during the term of the lease, SD Investments had the option to purchase the building for $275,000.00 plus the costs of any improvements made to the property after April 1, 1999.

On April 25, 2000, SD Investments sent a letter to Michael–Paul, notifying Michael–Paul of its intent to exercise the option to purchase the property on May 1, 2000. On May 2, 2000, an attorney representing SD Investments sent a letter to Michael–Paul stating that SD Investments had exercised its option to purchase the property. Subsequently, Michael–Paul refused to transfer ownership of the property to SD Investments and attempted to terminate the lease agreement.

On June 10, 2000, SD Investments filed its Petition for Equitable Relief and in the Alternative for Damages in the Circuit Court of Jackson County, Missouri. In

that petition, SD Investments claimed Michael–Paul had breached the Lease Agreement by failing to honor the option clause and sought specific performance of that clause and/or a declaration of SD Investments' rights under that clause. In its answer, Michael–Paul denied that SD Investments had any option to purchase the property or that it was capable of exercising any such option.

On June 21, 2000, Michael–Paul filed a Petition for Declaratory or Other Relief in the Circuit Court of Jackson County, asking the court to declare the lease invalid. Subsequently, the two petitions were consolidated into one case.

The trial court heard the matter on November 30, 2000. On January 24, 2001, the trial court entered judgment in favor of SD Investments. In relevant part, the court found that, pursuant to the lease agreement, SD Investments had a valid and enforceable option to purchase the property. The court concluded that SD Investments had properly exercised the option to purchase the property and further found that Michael–Paul's refusal to accept SD Investments' exercise of the purchase option constituted a breach of the lease agreement and that Michael–Paul thereby wrongfully prevented SD Investments from acquiring title to the property. The court ordered Michael–Paul to "transfer good and clear title" to the property to SD Investments and for SD Investments to pay the amount of $275,000.00 minus the amount of any rent payments that were paid to Michael–Paul after June 1, 2000.

This Court affirmed the trial court's judgment on August 27, 2002. *SD Invs., Inc. v. Michael–Paul, L.L.C.,* 90 S.W.3d 75, 86 (Mo.App. W.D.2002). After the Missouri Supreme Court denied transfer, this Court's mandate issued on December 31, 2002.

On April 15, 2003, SD Investments filed a Motion to Enforce Judgment alleging that Michael–Paul was refusing to transfer good and clear title to the property as required by the judgment and was insisting upon merely providing SD Investments with a deed without making provision for existing liens and claims against the property. SD Investments asked the trial court to order Michael–Paul to transfer good and clear title to the property to SD Investments as required by the original judgment. SD Investments also asked the court to allow it a credit for the $4,000.00 security deposit that Michael–Paul was improperly refusing to return.

On April 24, 2003, Michael–Paul filed its "Cross–Motion to Enforce Judgment and Suggestions in Opposition to Plaintiff's Requests." In that motion, Michael–Paul asserted that, under equitable and contract principles, SD Investments should be required to pay all of the property taxes that accrued after SD Investments exercised its option on April 25, 2000. Michael–Paul claimed that, because SD Investments was given a credit against its purchase price for the rent payments that had been made after April 25, 2000, and, therefore, enjoyed the use of the property rent-free, SD Investments should also bear the responsibility of paying the taxes on the property. Michael–Paul further asserted that SD Investments was obligated to pay 80% of the annual property taxes under the terms of the lease. For similar reasons, Michael–Paul asserted that SD Investments should be required to pay a special tax bill for sidewalk replacement that had been assessed against the property. Michael–Paul also claimed that the $4,000.00 security deposit that had been paid by SD Investments should be deemed to be non-refundable and that SD Investments should not receive a credit for that amount.

The trial court heard argument on the parties' motions on May 29, 2003. Subsequently, the trial court entered its "Order and Judgment" ordering enforcement of the prior judgment. The court noted that the parties had stipulated that SD Investments was entitled to a $48,000.00 credit against the purchase price for rent that was paid by SD Investments after April 25, 2000. In addition, the trial court found that the $4,000.00 security deposit was refundable under the terms of the lease and that SD Investments was entitled to a credit against the purchase price in that amount. Accordingly, the trial court found that SD Investments was entitled to a total credit of $52,000.00 against the purchase price for a net purchase price of $233,000.00. The trial court further found that its prior judgment required the transfer of good and clear title and that Michael–Paul was required to pay the property taxes that had been previously assessed against the property in order to comply with the court's order because they were an encumbrance on the title. The trial court also ordered Michael–Paul to pay 40% of the special tax bill for sidewalk and curb improvements. Finally, the court ordered the parties to make all reasonable efforts to expedite the closing on the property, which, in the absence of exigent circumstances, was to occur within forty-five days of the filing of the order.

Michael–Paul appeals from that judgment, challenging the trial court's determinations related to the property taxes and the special tax bill for sidewalks.[1] Michael–Paul contends the trial court erred in ordering it to pay the property taxes and 40% of the special tax because principles of equity require that SD Investments make those payments after having been granted a credit for the rent it paid on the property.

 Prior to addressing Michael–Paul's claims, we must consider whether the trial court had subject matter jurisdiction over the issues raised in the parties' motions. "Subject matter jurisdiction cannot be waived, nor can the parties by agreement confer subject matter jurisdiction upon the court." *Brady v. Pace*, 108 S.W.3d 54, 61 n. 5 (Mo.App. S.D.2003). "Consequently, the question of subject matter jurisdiction can be raised at any time by the parties, or by this Court *sua sponte*." *Id.*

 In the case at bar, the trial court's judgment became final and was affirmed by this Court on appeal. "Once a judgment becomes final under Rule 81.05, the trial court loses jurisdiction to entertain any further motions, unless another Rule provides otherwise." *Dangerfield v. City of Kansas City*, 108 S.W.3d 769, 773 (Mo.App. W.D.2003). The parties have cited to no rule that would allow the trial court to regain jurisdiction over the judgment. " 'A judgment entered without jurisdiction is void.' " *Schobert v. Pelfresne*, 91 S.W.3d 692, 694 (Mo.App. S.D.2002) (quoting *In re Marriage of Jeffery*, 53 S.W.3d 173, 176 (Mo.App. E.D.2001)). Moreover, once this Court issues its mandate, the trial court only has the authority to alter its judgment to the extent that such authority has been granted to the trial court in this Court's mandate. *City of Excelsior Springs v. Elms Redevelopment Corp.*, 18 S.W.3d 61, 64 (Mo.App. W.D.2000).

 In the case at bar, this Court did not even remand the matter back to the

---

1. In its brief, Michael–Paul notes that "[a]s a part of the appeal process, Appellant has conceded its liability for the deposit and the post-option rental payments, thereby condensing the issues in this case to that of the county real property taxes and the sidewalk assessment."

trial court. Thus, the judgment was final, and the trial court lacked any authority to alter its prior judgment or to entertain any new matters related to this case. "Any orders or adjudications in a cause subsequent to the mandate must be confined to those necessary to execute the judgment." *Howard Constr. Co. v. Teddy Woods Constr. Co.*, 844 S.W.2d 29, 30 (Mo.App. W.D.1992) (quoting *City of St. Charles v. Schroeder*, 510 S.W.2d 202, 203 (Mo.App. E.D.1974)); *See also State ex rel. County of St. Charles v. City of St. Peters*, 876 S.W.2d 46, 47–48 (Mo.App. W.D.1994).

 In that vein, " '[c]ourts have inherent power to enforce their own judgments and should see to it that such judgments are enforced when they are called upon to do so.' " *Multidata Sys. Int'l Corp. v. Zhu*, 107 S.W.3d 334, 339 (Mo. App. E.D.2003) (quoting *Lake Thunderbird Prop. Owners Ass'n, Inc. v. Lake Thunderbird, Inc.*, 680 S.W.2d 761, 763 (Mo.App. E.D.1984)). However, this power has significant limitations. "The trial court's inherent enforcement power applies to the judgment as originally rendered; the trial court's power to modify a judgment ceases when the judgment becomes final." *Missouri Hosp. Ass'n v. Air Conservation Comm'n of State of Missouri*, 900 S.W.2d 263, 267 (Mo.App. W.D. 1995). Thus, the trial court was precluded from altering, modifying, or changing its judgment, but it was not prevented from enforcing its judgment as originally entered. *Zhu*, 107 S.W.3d at 339.

 With regard to the trial court's order directing Michael–Paul to pay the property taxes, the trial court clearly had the authority to issue such an order in order to enforce its prior judgment. Under the original judgment, Michael–Paul was ordered to "transfer good and clear title" to SD Investments. " '[G]ood record title,' without words of limitation, means that the proper records shall show an unincumbered, fee-simple title, the legal estate in fee, free and clear of all valid claims, liens, and incumbrances." [2] *Black's Law Dictionary* 693 (6th ed.1990). Similarly, "clear title" means "[g]ood title; marketable title; one free from incumbrance, obstruction, burden, or limitation." *Black's Law Dictionary* 252 (6th ed.1990). Unpaid property taxes are an encumbrance against the property. *See Beatty v. State Tax Comm'n*, 912 S.W.2d 492, 497 (Mo. banc 1995); *See also Black's Law Dictionary* 527 (6th ed.1990) (defining "encumbrance" to include accrued and unpaid taxes). The trial court properly found that, in order for good and clear title to be transferred to SD Investments, Michael–Paul had to pay the back taxes on the property, which were encumbering the title. Thus, in ordering Michael–Paul to pay the property taxes, the trial court was merely acting to enforce its prior judgment.

The trial court acting to enforce its prior judgment, however, had no authority to consider Michael–Paul's newly raised claims that equity and/or the language of the lease required that the property taxes be paid by SD Investments. Thus, to the extent that the trial court's judgment addressed Michael–Paul's equitable and contract claims related to the property taxes, the trial court lacked subject matter jurisdiction over those claims, and that portion of the judgment is void. *Christian Health Care of Springfield West Park, Inc. v. Little*, 145 S.W.3d 44, 56 (Mo.App. S.D. 2004).

**2.** *Black's Law Dictionary* uses "incumbrance" and "encumbrance" interchangeably. Indeed, in defining "incumbrance", *Black's* states, "See Encumbrance." *Black's Law Dictionary* 768 (6th ed.1990). While we quote *Black's* as utilizing the "incumbrance" spelling, this Court will use the more widely recognized "encumbrance" spelling in this opinion where we are not quoting another source.

■ We must next consider whether the trial court had the authority to order Michael–Paul to pay 40% of the special tax bill for sidewalk and curb improvements and SD Investments to pay 60% of the special tax bill. In its Cross–Motion to Enforce Judgment, Michael–Paul averred that "a special tax bill for sidewalk replacement ha[d] been issued against the subject property in the amount of $30,202.09." That special tax bill resulted from the City of Kansas City, while the original appeal was pending, making repairs to the sidewalk adjacent to the property after neither the property owner nor the tenant complied with the City's demand that the repairs be made. Michael–Paul asked the trial court to order SD Investments to pay the special tax bill, contending that SD Investments was responsible for the maintenance and repair of the sidewalks under the terms of the lease and had failed to timely make the repairs demanded by the City.

The special tax assessed against the property was referenced in the Title Commitment and constituted a burden against the title. Accordingly, the trial court had the authority to order Michael–Paul to pay the special tax bill in order to allow good and clear title to pass to SD Investments as provided in the trial court's judgment. In so doing, the trial court was merely exercising its inherent power to enforce the judgment.

■ As was the case with the property taxes, however, the trial court lacked the authority to entertain Michael–Paul's claims that SD Investments had a contractual and/or equitable obligation to pay the special tax. The trial court's authority was limited to enforcing its judgment ordering Michael–Paul to convey good and clear title to the property to SD Investments. The trial court had no authority to consider who should be responsible for the

payment of the special tax or to divide that obligation between the parties. These issues were not raised or litigated in the underlying action and were not referenced directly or indirectly in the judgment. Accordingly, the trial court erred in ordering SD Investments to pay a portion of the special tax and should merely have ordered Michael–Paul to satisfy that obligation in order to convey good and clear title to the property to SD Investments. To the extent that the trial court's Order and Judgment addressed Michael–Paul's claims, that portion of its judgment is void.

Moreover, all of the provisions of the judgment that are challenged by Michael–Paul on appeal relate to its contractual and equitable claims, over which the trial court lacked jurisdiction. This Court's jurisdiction derives from the jurisdiction of the trial court, and if the trial court does not have jurisdiction to consider the merits of a claim, this Court lacks jurisdiction to consider an appeal therefrom. *State ex rel. Pulliam v. Reine*, 108 S.W.3d 148, 153 (Mo.App. W.D.2003); *Schobert*, 91 S.W.3d at 694. Because the circuit court lacked jurisdiction over the matters challenged by Michael–Paul on appeal, this Court lacks jurisdiction over those claims, and Michael–Paul's appeal must be dismissed. *Pulliam*, 108 S.W.3d at 153.

In short, the trial court did not err in ordering Michael–Paul to pay the property taxes owed on the property in order to enforce its judgment requiring Michael–Paul to convey good and clear title to the property to SD Investments. To the extent the judgment addressed Michael–Paul's contractual or equitable claims that SD Investments should pay some or all of those taxes, that portion of the judgment is void. Likewise, the trial court had the authority to order Michael–Paul to pay the special tax encumbering the property to enforce its prior judgment, but lacked any authority to consider Michael–Paul's con-

tractual and equitable claims that SD Investments should be responsible for paying that tax. Accordingly, the trial court should have simply ordered Michael–Paul to pay the special tax bill in order for Michael–Paul to provide good and clear title to the property to SD Investments, and the portion of its judgment addressing Michael–Paul's contractual and equitable claims and ordering SD Investments to pay a portion of the special tax is void.[3] We further note that, while the provisions of the trial court's judgment related to the security deposit paid by SD Investments are not challenged on appeal, the trial court lacked jurisdiction to address those issues as well, and that portion of the judgment is also void.[4]

In conclusion, the trial court lacked jurisdiction to take any action other than to enforce its original judgment. "Rule 84.14 permits the appellate court to enter the judgment that the trial court should have entered under the circumstances of the case." *Leone v. Leone,* 917 S.W.2d 608, 612 (Mo.App. W.D.1996). We, therefore, exercise our discretion to modify the trial court's judgment to reflect that Michael–Paul is obligated to pay all of the special tax bill in addition to all property taxes accrued prior to the date on which title is or was effectively transferred to SD Investments in order to provide SD Investments with good and clear title to the property as required by the trial court's original judgment.

All concur.

---

**3.** This Court offers no opinion as to whether the issues that Michael–Paul attempted to raise in its Cross–Motion to Enforce Judgment might properly be raised in a separate action. We merely hold that it was improper for the trial court to address those issues in exercising its power to enforce the judgment.

**4.** From the briefs, it appears that the parties may have settled this issue.