**James Price SCHUMACHER, et al., Appellants,**

v.

**Louis Edward Schumacher AUSTIN, Respondent.**

**No. WD 74901.**

Missouri Court of Appeals, Western District.

March 12, 2013.

As Modified April 30, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 30, 2013.

Application for Transfer Denied June 25, 2013.

George E. Kapke, Lee's Summit MO, for Appellants.

Danny L. Curtis, Kansas City, MO, for Respondent.

Before Division Three: MARK D. PFEIFFER, Presiding Judge, VICTOR C. HOWARD, Judge and ALOK AHUJA, Judge.

VICTOR C. HOWARD, Judge.

James P. Schumacher and Cindy Sue Schumacher (collectively Beneficiaries) appeal the trial court's orders showing satisfaction of judgment in favor of Louis Edward Schumacher Austin and Sara Schumacher (collectively Trustees).[1] They contend that the court's orders improperly modified the judgment sought to be satisfied. The orders are reversed, and the case is remanded to the trial court with directions.

In the underlying litigation, Beneficiaries filed a petition for declaratory judgment after a dispute arose regarding Trustees' management of trust assets, specifically the transfer of trust assets to a partnership and limited liability company created by the Trustees. Beneficiaries are two of four children of Louis E. Schumacher, Sr. (Grantor) and Sara Schumacher (a/k/a Topper).[2] Grantor and Topper had two other children—Austin and Johnny Griffin Schumacher. Beneficiaries took the position that there were no disputed facts relevant to their action for declaratory judgment, waived trial, and asked the court to decide only legal issues. Accordingly, the trial court considered factual assertions and exhibits set forth by Beneficiaries and not contested by Trustees. The trial court found the following undisputed facts, which are taken from the declaratory judgment and from this court's opinion in *Schumacher v. Schumacher*, 303 S.W.3d 170 (Mo.App. W.D.2010), without citation.

In 1976, Grantor created an irrevocable trust (Trust) and designated Topper and Austin as the trustees. Under the terms of the trust, income was to be paid in equal shares to each of the four children during Grantor's lifetime and for a period of five years thereafter. The Trust was to termi-

---

1. Suggestions of death regarding Sara Schumacher were filed on October 11, 2012. A motion to substitute a party for Sara Schumacher was not filed. As such, Sara Schumacher has been removed as a party to his appeal, and the only respondent in this appeal is Louis Edward Schumacher Austin.

2. For ease of reading and clarity, persons in this opinion are sometimes referred to by their first or last name only. No disrespect is intended.

nate five years after Grantor's death, and the principal was to be distributed to Grantor's then living descendants. In 1984, Grantor formed a limited corporation named The Schumacher Group, Ltd. (Corporation), and the Corporation constructed the Austin Hills West office building. The irrevocable trust was its sole shareholder. In 1986, Grantor and Topper created a second trust, a revocable trust, and named themselves as trustees.

Prior to Grantor's death in May 1998, the Trust held income producing assets in addition to owning 100% of the stock in Corporation. At the time of Grantor's death, the Trust held three assets: cash or cash equivalents, land, and stock in the Corporation. Upon Grantor's death, the revocable trust split into three separate trusts: a qualified terminable interest property trust (QTIP trust), a marital trust, and a family trust. Topper was the sole trustee of the three trusts.

In January 2001, the Trust, Corporation, and the family, QTIP, and marital trusts formed two entities: the Topper Schumacher Family Ltd. Partnership (Partnership) and the Lou Schumacher, Sr., LLC (LLC). Topper and Austin signed on behalf of the Trust; Topper, as President of the Corporation and as sole trustee of the family, QTIP, and marital trusts, signed on behalf of those parties. The LLC is the general partner of the Partnership. The Partnership agreement provided that the Partnership will continue until 2051 unless all partners agree to an earlier termination and that no partner shall have the right to partition any real property of the Partnership during its term.

Shortly after forming the Partnership and LLC, Trustees conveyed all cash and land of the Trust into the Partnership and LLC in exchange for a .5% interest in the Partnership valued at $7000 and a .37% interest in the LLC valued at $55. Benefi-

ciaries learned of the conveyance after it occurred. In February 2001, Topper also conveyed all of the assets in the family, QTIP, and marital trusts to the Partnership and LLC. Seventeen months later, Topper as the sole director and president of the Corporation, transferred the Austin Hills West building to the Partnership and $1770 to the LLC. By December 2001, Topper held a 59.37% controlling interest in the LLC, the general partner of the Partnership.

Prior to May 2003 when the Trust terminated (five years after Grantor's death), Trustees exchanged the Trust's interests in the Partnership and LLC for an unspecified number of shares of the Corporation. The trial court noted in the declaratory judgment that the number of shares received by the Trust was irrelevant because receipt of the additional shares did not increase the value of the Trust's 100% interest in the Corporation. When the Trust terminated in May 2003, Trustees distributed its only asset, shares of the Corporation, to Jim, Cindy, Johnny, and Austin.

Based on these undisputed facts, the trial court made the following factual conclusions in its declaratory judgment:

> The overall effect of the Defendant Trustees' creation of the LLC and Partnership, and subsequent conveyance of all Trust assets to those entities, was to delay the Trust beneficiaries' enjoyment of the Trust. Absent such acts, upon the May 12, 2003 termination of the Trust each beneficiary would have received a one-quarter interest in a Corporation which owned the Austin Hills West building, land and liquid assets. Instead, as the result of the Defendant Trustees' actions, they each received 25% of the outstanding stock in a Corporation whose sole asset is a 15.9% interest in a limited partnership and an

11.76% interest in the limited liability company which acts as its general partner. Under the terms of the agreement by which it was created, the Partnership will continue until 2051. Absent agreement of all partners, the shareholders of the Corporation (the former Trust beneficiaries) have no ability to gain access to Partnership assets. The partners whose agreement is required for early termination of the Partnership are the Family trust, QTIP trust, and Martial trust, each of which is administered by Topper as trustee. Thus, notwithstanding the Trust beneficiaries' naked legal title to the Corporation stock, it is still Topper who enjoys the dominion and control normally associated with stock ownership.

The effect of Topper's exchange of QTIP and Family trust assets for LLC and Partnership interests is likewise a potential delay in the beneficiaries' enjoyment of these trusts. Grantor's children, who are to receive the principle of the QTIP and Family trusts upon Topper's death, will receive LLC and Partnership interests rather than liquid or marketable assets. Although the beneficiaries will then control the Partnership and LLC, there is no guaranty that Defendant Austin (who participated in the creation of the Partnership and LLC and the exchange of Trust assets for interests therein) will agree to the immediate termination of these entities.

The trial court ultimately concluded that Trustees acted outside their authority when they converted assets of the trusts and Corporation into Partnership and LLC interests because they had violated their duties to Beneficiaries to adhere to the purpose of the trusts, to be loyal, and to prudently administer the trust. As a result, the transfers of assets of the trusts and Corporation to the Partnership and LLC were voidable transfers and Beneficiaries were entitled to have the transfers set aside. Accordingly, the trial court declared the Partnership and LLC entities and the transactions by which they were funded void ab initio. Trustees were directed "to take all steps necessary to transfer legal title to all property acquired by the Corporation, Partnership and LLC from, or traceable to, the Trust and the QTIP and Family trusts back to the trust estate from which the property was transferred or is traceable." Trustees were also directed to provide the beneficiaries of the trusts a revised accounting accurately reporting the transactions of the trusts without reference to the void conveyances of assets of the respective trusts to the Corporation, Partnership, and LLC and to immediately distribute the assets of the Trust to its beneficiaries in accordance with the terms of the Trust.

Trustees appealed the declaratory judgment contending that the trial court erred in entering a judgment finding that they had breached their fiduciary duties because the issue was outside of the pleadings and had not been tried by consent and the court failed to hear evidence and consider facts that would have supported their investment decisions. *Schumacher*, 303 S.W.3d at 172. This court affirmed the judgment in part and reversed it in part, and the case was remanded to the trial court to hear and consider evidence on Trustees' affirmative defenses. *Id.* at 177. After further proceedings, the trial court entered a judgment regarding Trustees' affirmative defenses, and Trustees appealed. The appeal was ultimately dismissed.

Thereafter, Trustees filed a motion for entry of satisfaction of judgment arguing that they had complied with the declaratory judgment. In support of their motion, Trustees filed two exhibits, a Compliance Action Plan and Summary and the Final

Accounting Compilation, which they asserted definitely established that they unwound the void transactions, distributed the assets consistent with the distribution that would have existed from the Trust had the Partnership and LLC transactions never taken place, and provided a full and complete accounting to all beneficiaries of the steps they took and the assets in the three remaining trusts.

In response to Trustees' motion, Beneficiaries filed a motion to enforce the judgment arguing, in part, that the declaratory judgment had not been satisfied because there were 13 shares of Corporation stock that Trustees issued to the Partnership that had not been returned to the Corporation and the transaction voided but instead Trustees transferred those shares to the family, QTIP, and marital trusts, which never owned any stock in the Corporation. Beneficiaries argued that, as a result of the Trustee's actions, they had received only 48.64% of the Corporation stock and not their collective 50% interest (25% each) in the Corporation and, therefore, "remain captive minority shareholders in the Corporation and [Trustees] control the majority of the stock." Beneficiaries further asserted that the facts were undisputed that the Corporation was 100% owned by the Trust and the res of the Trust was to be distributed in equal shares to the four children and asked the trial court to order Trustees either to void the 13 shares they issued to the Partnership or to transfer the 13 shares to the Corporation and then distribute them equally to the beneficiaries.

The trial court entered a scheduling order to establish a procedure for adducing evidence. The scheduling order required the Trustees to file proposed stipulated facts and the Beneficiaries to file any objections they had to the Trustees' Compliance Action Plan, Final Accounting Compilation, and proposed stipulated facts. In their proposed stipulated facts, Trustees stated, "All shares of the Corporation owned by the [Trust] had previously been distributed to each of the beneficiaries in May of 2003, so no further action was required." The statement was supported by copies of stock certificates showing that 472 shares of the Corporation's stock were issued to the four Trust beneficiaries (118 shares each) in May 2003. Beneficiaries did not dispute any of the record and waived the opportunity to present additional evidence at an evidentiary hearing. Although they did not object to the stipulation of facts or the Trustees' reports, they did argue that the actions taken by Trustees, as shown in the undisputed record, did not comply with the mandates of the declaratory judgment.

The trial court entered an order granting Trustees' motion for entry of satisfaction of judgment and denying Beneficiaries' motion to enforce. It also entered a separate satisfaction of judgment finding that the declaratory judgment had been fully satisfied. In its orders, and relevant to the issue here, the court found:

All property acquired from, or traceable to, the [Trust], QTIP and Family trusts was returned, and accounted for in accordance with the September 25, 2008 Judgment;

All beneficiaries' interests in the [Trust] have been distributed and received, including stock, cash and proportionate shares of all real estate owned by the [Trust];

All 472 shares of the Corporation owned by the [Trust] were distributed in May of 2003, and no further action is required. [Beneficiaries'] argument that the remaining 13 shares of the Corporation should be transferred to the corporate treasury and redistributed to [Beneficiaries] in their proportion-

ate interests is denied. The 13 shares were never owned by the [Trust], and were therefore not traceable to that trust. [Beneficiaries] presented no legal authority for their contention that the 13 shares should be returned to the corporate treasury, rather than to the Marital, QTIP and Family trusts in their respective ownership interests in the voided [Partnership]. [Trustees] properly accounted for the transfer of the 13 shares in the Compliance Action Plan and Summary and Final Accounting.

This appeal by Beneficiaries followed.

Rule 74.11(c) provides, "If a judgment creditor who has received satisfaction of a judgment fails to acknowledge such satisfaction immediately, any interested person may apply to the court where the judgment was entered for an order showing satisfaction." The trial court's ruling on a Rule 74.11(c) motion is an appealable special order after final judgment. *McLean v. First Horizon Home Loan,* 369 S.W.3d 794, 799 n. 3 (Mo.App. W.D.2012). The ruling is reviewed as any other court-tried case under the standard set forth in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). *Id.* at 799. As such, the order of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

■ In their sole point on appeal, Beneficiaries contend that the trial court erred in entering satisfaction of judgment and denying their motion to enforce because the trial court changed and modified the declaratory judgment after it no longer had jurisdiction to do so. They argue that the declaratory judgment provided that they each receive 25% of the stock of the Corporation but the orders entering satisfaction of judgment provided for less than

25% of that stock. Specifically, Beneficiaries assert that Trustees did not distribute 25% of the stock in the Corporation to the four Trust beneficiaries but rather diluted the beneficiaries' interest in the Corporation by creating and transferring 13 shares of stock to the Partnership and ultimately to the remaining trusts controlled solely by Topper.

■ Under Rule 75.01, the trial court retains control over judgments during the thirty-day period after entry of judgment. *McLean,* 369 S.W.3d at 800. If timely and appropriate post-trial motions are filed, the power to control the judgment is extended to 90 days after the filing of the motions. *Id.* at 800 n. 5. Once a judgment becomes final under Rule 81.05, the trial court loses jurisdiction to entertain further motions or to change, alter, or modify the final judgment. Rule 75.01; *SD Invs., Inc. v. Michael–Paul, L.L.C.,* 157 S.W.3d 782, 785 (Mo.App. W.D.2005); *Gaunt v. State Farm Mut. Auto. Ins. Co.,* 24 S.W.3d 130, 135 (Mo.App. W.D.2000). Once a trial court is divested of jurisdiction, any attempt by it to continue to exhibit authority over the case, whether by amending the judgment or entering subsequent judgments, is void. *McLean,* 369 S.W.3d at 800. Moreover, once the appellate court enters its mandate, the trial court only has the authority to alter its judgment to the extent that such authority has been granted in the appellate court's mandate. *SD Invs.,* 157 S.W.3d at 786.

■ While Rule 75.01 bars the trial court's right to change, alter, or modify its judgment, it does not prohibit its enforcement as originally entered. *Gaunt,* 24 S.W.3d at 135. "[C]ourts have inherent power to enforce their own judgments and should see to it that such judgments are enforced when they are called upon to do so." *SD Invs.,* 157 S.W.3d at 786 (internal

quotes and citations omitted). "The trial court's inherent enforcement power applies to the judgment as originally rendered; the trial court's power to modify a judgment ceases when the judgment becomes final." *Id.* (internal quotes and citation omitted).

In this case, the trial court entered its declaratory judgment on September 25, 2008. The declaratory judgment became final on December 17, 2008, when the trial court ruled on the after-trial motions. As a result of the first appeal, the trial court was directed by this court to hear and consider evidence on Trustees' affirmative defenses. The trial court complied with this court's mandate and entered its judgment on the affirmative defenses on August 24, 2010. No after-trial motions were filed, and that judgment became final thirty days after its entry. The second appeal from that judgment was ultimately dismissed. Accordingly, the declaratory judgment was final, and the trial court was precluded from changing, altering, or modifying but not from enforcing it as originally entered.

In its declaratory judgment, the trial court considered the following facts, which it found were undisputed, relevant to the Corporation stock: when Grantor formed the Corporation in 1984, he deposited all of the Corporation stock to the Trust; the Trust continued to own 100% of the stock of the Corporation prior to Grantor's death in 1998; prior to May 2003, Trustees exchanged the Trust's interests in the Partnership and LLC for an unspecified number of shares of the Corporation and the Trust's receipt of the additional shares did not increase the value of the Trust's 100% interest in the Corporation. Based on the undisputed facts, the trial court found that the overall effect of the Trustees' creation of the Partnership and LLC and subsequent conveyance of all Trust assets to those entities was to delay the Trust beneficiaries' enjoyment of the Trust and absent such acts, each Trust "beneficiary would have received a one-quarter interest in [the] Corporation" upon termination of the Trust. It concluded that the Trustees violated their duties to Beneficiaries when they converted assets of the trusts and Corporation into Partnership and LLC interests, declared the Partnership and LLC entities and the transactions by which they were funded void ab initio, and ordered Trustees "to take all steps necessary to transfer legal title to all property acquired by the Corporation, Partnership and LLC from, or traceable to, the Trust and the QTIP and Family trusts back to the trust estate from which the property was transferred or is traceable."

■ "The general rules of construction for written instruments are used to construe court judgments." *Gaunt,* 24 S.W.3d at 138 (internal quotes and citation omitted). "[W]hen the language of the judgment is plain and unambiguous there is no room for construction or interpretation, and the effect thereof must be declared in the light of the literal meaning of the language used." *Id.* (internal quotes and citation omitted). Giving the language of the declaratory judgment its plain and ordinary meaning, the trial court found that the Trustees breached their duties to the Trust beneficiaries by creating the Partnership and LLC and transferring assets of the trusts and Corporation to them and that absent such actions by the Trustees, each of the four Trust beneficiaries would have received 25% of the Corporation that owned the Austin Hill West building upon termination of the Trust in May 2003. The Partnership and LLC and the transactions that formed them were declared void ab initio, and the Trustees were ordered to undo the transfers and distribute the assets of the Trust to the

Trust beneficiaries consistent with the distribution that would have existed from the Trust had the Partnership and LLC transactions never taken place. Thus, under the judgment as rendered, each of the four Trust beneficiaries was to receive 25% of the stock of the Corporation. The issue on appeal, therefore, is whether the trial court had authority to determine that 13 shares of the Corporation were never owned by the Trust and thus were not among those assets that Trustees were required to distribute to Beneficiaries.

A balance sheet of the family, QTIP, and marital trusts dated June 30, 2009, and contained in the Compliance Action Plan shows 13 shares of the Corporation's stock as assets of the three trusts. That balance sheet contains the only reference to the 13 shares in the entire 535 page record before the trial court. At the hearing on the parties' motions, both parties, through their attorneys, admitted to the existence of the 13 shares of stock. Trustees' counsel asserted that 13 shares were issued in December 2002 by the Corporation to the Partnership "in lieu of debt" and that those shares were returned to the entities that offered the consideration for which the shares were issued, namely the family, QTIP, and marital trusts. He, however, admitted that such assertion was not part of the Trustees' stipulated facts.

On the other hand, the undisputed record contains evidence that the Trust continued to hold 100% of the Corporation's stock after the purported transfer of the 13 shares to the Partnership in December 2002. The Compliance Action Plan includes a balance sheet of the Corporation dated June 30, 2009, showing that the Corporation had 472 shares of outstanding stock on that date. It also includes a document filed by the Corporation with the Secretary of State indicating amendment of its articles of incorporation on June 30, 2009. The document reported 472 outstanding shares of stock of which 472 were voting shares. Both documents are consistent with the 472 shares distributed to beneficiaries in May 2003 when the Trust terminated. Furthermore, the Final Accounting Compilation includes the Corporation's tax returns from 2002 through 2008. All reported that the Trust owned 100% of the voting stock of the Corporation in those years.

The issue of the 13 additional shares purportedly issued to the Partnership in December 2002 was not raised or included in the undisputed facts in the underlying action and not directly referenced in the declaratory judgment. The only reference in the declaratory judgment to the issuance of additional shares was the undisputed fact that an unspecified number of shares were issued to the Trust prior to the Trust's termination in May 2003. Trustees did not appeal any of the findings or conclusions in the declaratory judgment regarding the Trust's 100% ownership of the Corporation's stock. The trial court's authority in this case was limited to enforcing its declaratory judgment declaring the Partnership and LLC and the transactions by which they were funded void and ordering Trustees to undo those transactions and specifically, with regard to the Corporation's stock, to distribute to each of the four Trust beneficiaries 25% of the stock. The trial court did not have any authority to rule that 13 shares of the Corporation were never owned by the Trust and thus were not among those assets that Trustees were required to distribute to Beneficiaries. In finding that receipt of 24.32% of the Corporation's stock by each of the four Trust beneficiaries satisfied the judgment, the trial court effectively altered its declaratory judgment, which it was without jurisdiction to do. Accordingly, the trial court erred in entering the orders granting Trustees' mo-

tion for entry of satisfaction of judgment and denying Beneficiaries' motion to enforce and entering a separate satisfaction of judgment. The orders are, therefore, reversed. The case is remanded, and the trial court is directed to order Trustee Austin to satisfy the declaratory judgment including ensuring that the Trust beneficiaries each receive 25% of the outstanding stock of the Corporation.[3]

All concur.

---

**3.** Other parties or entities may need to be added on remand to satisfy the declaratory judgment.